**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

RUTH EVANGELISTA BOFF       :

          :

      **Plaintiff,**       :

          :

      **v.**       :

          :       **Civil Action No. 1:17-cv-01523**

**INTERCONTINTENTAL HOTELS**       :

**GROUP RESOURCES, INC.**       :

          :

      **Defendants.**       :

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants InterContinental Hotels Group Resources, Inc. and Inter-Continental Hotels Corporation (hereinafter "Defendants"), by and through counsel, Bonner Kiernan Trebach & Crociata, LLP, pursuant to Fed. R. Civ. Proc. 56; and LCvR 7(a) and 7(h) and submit the following Memorandum of Points and Authorities in support of their Motion for Summary Judgment. Defendants assert that Plaintiff has failed to state a claim upon which relief can be granted.

In further support hereof, Defendants state as follows:

**I.    FACTUAL BACKGROUND**

The Willard InterContinental Washington D.C. Hotel (hereinafter "the Hotel") is located in the District of Columbia, and is operated by Defendant Inter-Continental Hotels Corporation. [1] The Amended Complaint alleges that on July 29, 2016, Plaintiff Ruth Evangelista Boff ("Plaintiff") slipped and fell on the granite ramp, which was wet from rain, at the 1401 Pennsylvania Avenue, N.W. entrance of the hotel. (See Amended Complaint at ¶ 6). Video

---

[1] The Amended Complaint alleged that both Defendants owned or operated the Hotel. As argued in Section III(c) below, this allegation is incorrect, and Plaintiff now concedes as such.

surveillance of the occurrence reveals that Plaintiff exited a taxi in front of the Hotel. It was raining at the time. A few moments later, the taxi began to drive away. As the taxi began to drive off, Plaintiff proceeded to run after it. As Plaintiff was running after the moving vehicle, she slipped and fell. (See video surveillance footage (Ex. 1); Plaintiff's deposition (Ex. 2) at 42:2-44:4). Plaintiff conceded that she was running after the taxi at the time of her fall. (Ex. 2 at 42:2-44:4).

The Amended Complaint alleges that the awning above the entrance to the Hotel was placed in violation of District of Columbia Building Code so that it caused rainwater to pour directly onto the granite ramp where Plaintiff walked. (See Amended Complaint at ¶ 7).

## II.     LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine when, upon review of the evidence, a reasonable jury could find for the nonmovant. *Id.* Thus, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Courts look at the substantive law on each claim to determine which facts are "material." *Potomac Elec. Power Co. v. Mirant Corp.*, 251 F. Supp. 2d 144, 147 (2003) (*citing, Anderson* 477 U.S. at 248). A complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

2

To survive a motion for summary judgment, the nonmovant must make a "sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. More specifically, to survive an adverse Rule 56 motion, the nonmoving party must have established a prima facie case. *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).

## III.   ARGUMENT

### A.   Plaintiff Has Failed to Support a Prima Facie Case of Negligence

Plaintiff failed to designate a necessary expert in support of her claim of negligence. Accordingly, the evidence in this case is entirely devoid of any facts that support Plaintiff's claim that any act or omission by Defendants constituted negligence.

In the District of Columbia, "[t]he elements of a cause of action for negligence are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *Woods v. District of Columbia*, 63 A.3d 551, 553 (D.C. 2013) (*quoting Taylor v. District of Columbia*, 776 A.2d 1208, 1214 (D.C. 2001)). As it pertains to the second element, Plaintiff has failed to present any facts that Defendant breached any such duty.

The mere fact that Defendant Inter-Continental Hotels Corporation operated the Hotel does not in itself render it negligent for any injury that may have occurred on the premises. It is well-established in the District of Columbia that the "mere happening of an accident does not impose liability or reveal proof of negligence." *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978). The burden is upon the invitee to show that the Defendant breached a duty of care to the Plaintiff. *Smith v. Safeway Stores, Inc.*, 298 A.2d 214 (D.C. 1972). To do so in a premises liability action, Plaintiff must first establish the applicable standard of care. *Toy*, 549 A.2d at 6.

3

In order to prevail on a negligence claim under D.C. law, a plaintiff "must prove the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009)). Moreover, a plaintiff "'must put on expert testimony to establish what the standard of care is if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson.'" *Briggs v. WMATA*, 481 F.3d 839, 845 (D.C. Cir. 2007) (quoting *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000)). Accordingly, if expert testimony were required to establish the standard of care here, a plaintiff's failure to offer such testimony would justify the grant of summary judgment against him. *Burke v. Air Serv Intl, Inc.*, 685 F.3d 1102, 1105 (D.C. Cir. 2012) (affirming entry of summary judgment where plaintiff failed to designate expert required under D.C. tort-law); *see also Briggs,* 481 F.3d at 848 (affirming summary judgment because, under D.C. law, failure to establish the standard of care is fatal to a negligence claim); *see also Varner v. District of Columbia*, 891 A.2d 260, 268-71 (D.C. 2006).

In the matter at hand, Plaintiff's sole factual allegation in the Amended Complaint is that "the awning [above the exterior of the front entrance to the Hotel] was placed in violation of District of Columbia Building Code Chapter 32, Encroachments into the Public Rights of Way, § 3201-4 so that it caused rainwater to pour directly onto the polished granite ramp where Plaintiff walked." (See Amended Complaint at ¶ 7). In discovery, when asked to state the factual basis to support the contention that her damages were proximately caused by Defendants, Plaintiff responded as follows:

> "Awning near entrance of hotel was designed to that water spills onto sloping smooth granite surface on hotel exit ramp, notwithstanding defendant's knowledge of hazard."

4

"There is an awning causing rainwater to spill directly onto the ramp which connects the sidewalk to the street."

"I slipped on the ramp because of the water spilling off of the awning and directly and indirectly onto the ramp, making it slippery, leading me to falling."

(See Plaintiff's Answer to Interrogatories Nos. 3-5 (Ex. 3)).

Plaintiff's theory of liability focuses on the construction, design, and engineering of the awning. As such, in order to establish that the awning was designed or constructed in a negligent manner, Plaintiff was required to designate an expert.

The Amended Complaint generally alleges that the awning at issue constituted a hazardous condition. (A.5-6 ¶¶ 10-11). Thus, the primary issue in this case concerns premises safety. "Expert testimony is routinely required in negligence cases . . . which involve issues of safety." *Briggs*, 481 F.3d at 845-46 (applying District of Columbia law). To the extent that Plaintiff's sole contention is that the ramp constituted a safety hazard, expert testimony is required to support such a contention.

Indeed, the D.C. Court of Appeals often requires expert testimony in cases involving public safety, and has affirmed numerous trial court rulings requiring an expert on issues of safety. *Varner v. District of Columbia*, 891 A.2d at 267. When an expert's testimony is required, the expert must articulate and refer to a standard of care by which the defendant's actions can be measured. *District of Columbia v. Carmichael*, 577 A.2d 312, 314 (D.C. 1990). This is because if the standard is not proven, then a deviation from that standard is incapable of proof. *Id.*

The modern position of the D.C. Court of Appeals requires expert testimony in a number of cases that, even "in a number of cases that, on first blush, appear to be within the realm of common knowledge." *Briggs,* 481 F.3d at 845. Indeed, the U.S. Court of Appeals for

5

the D.C. Circuit observed that, "[r]ecently. . . the D.C. Court of Appeals has required expert testimony in a wider variety of cases, even in those that might initially seem to fall within jurors' common knowledge." *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009); *see e.g. Messina v. District of Columbia*, 663 A.2d 535 (D.C. 1995)(holding that although the average juror may be familiar with playgrounds, expert testimony is required to establish a national standard of care pertaining to the softness of the ground beneath a set of playground monkey bars); *Katkish v. District of Columbia*, 763 A.2d 703, 706 (D.C. 2000)(holding that while the average juror may be able to discern that a tree appears to be leaning over, a national standard of care for procedures to determine whether and under what circumstances a leaning tree requires an emergency response requires expert testimony); *Hill v. Metropolitan African Methodist Episcopal* Church, 779 A.2d 906, 908-10 (D.C. 2001)(despite familiarity that the average juror may have in attending crowded gatherings, enunciating a national standard of care for crowd control procedures for such a gathering requires expert testimony in a case where a churchgoer was trampled when exiting the balcony.[2]

Plaintiff does not allege that the existence of any awning, in itself, constitutes a safety hazard. Rather, Plaintiff contends that certain mechanical aspects of this particular awning were unsafe. Accordingly, Plaintiff raises a question "distinctly related" to the design and construction of the awning. This Court has unequivocally held that when questions related to the engineering or construction professions are raised by a plaintiff, as they are in this case,

---

[2] This Court's jurisdiction stems from the diversity of the parties. See Def.'s Pet. Removal ¶¶ 5-6; 28 U.S.C. §§ 1332, 1441. A federal court sitting in diversity must apply the substantive law of the jurisdiction in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). This Court's duty, then, "is to achieve the same outcome [that] would result if the District of Columbia Court of Appeals considered this case." *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 21, 413 U.S. App. D.C. 275 (D.C. Cir. 2014). To fulfill this obligation, guidance stems from the published opinions of the D.C. Court of Appeals. *See id.*

expert testimony is required to establish the requisite standard of care. *Tripmacher v. Starwood Hotels & Resorts Worldwide, Inc.*, 277 F. Supp. 3d 104, 111 (D.D.C. 2017).

As previously indicated, Plaintiff must establish the standard of care to survive summary judgment on her negligence claim. *Scott v. District of Columbia*, 101 F.3d 748, 757 (D.C. Cir. 1996) (stating that "[f]ailure to prove a standard of care is . . . fatal to a negligence claim" under District of Columbia law). When the standard of care is beyond the knowledge of the typical lay juror, a plaintiff must enunciate a standard through expert testimony. *See Hill v. Metropolitan African Methodist Episcopal Church*, 779 A.2d at 908-10. Where "the defendant is alleged to have failed to protect the plaintiff from harm, the expert must clearly articulate and reference a standard of care by which the defendant's actions can be measured." *Varner v. District of Columbia*, 891 A.2d 260, 269 (D.C. 2006). The purpose of requiring expert testimony to establish a standard of care on issues that are beyond juror knowledge is to avoid speculation about the conduct against which the defendant's actions are to be judged. *Washington v. Washington Hospital Center*, 579 A.2d 177, 181 (D.C. 1990); *District of Columbia v. Davis*, 386 A.2d 1195, 1201 (1978); *Kinchloe v. Safeway Stores, Inc.*, 285 A.2d 699, 701 (D.C. 1972). Experts must identify a "concrete standard upon which a finding of negligence could be based." *District of Columbia v. Carmichael*, 577 A.2d 312, 315 (D.C. 1990). The expert must clearly articulate what the national standard is and how it was violated by the defendants, which must be based upon "specific standards with specific facts or conduct." *Id.* The expert must clearly relate the standard of care to the practices in fact followed by other comparable entities or to some standard nationally recognized by them. *See Levy v. Schnabel Foundation Co.*, 584 A.2d 1251, 1255 (D.C. 1991).

In response to the allegations set forth in the Amended Complaint, Defendants retained the services of a mechanical engineer, William Daley, P.E., to evaluate the awning at issue. Mr. Daley's expert report noted that the awning did not collect water and permit that collected water to flow over the public walking surfaces near the awning. Rather, the awning contained a gutter system with downspouts that conveyed collected water underground and away from the area involved in Plaintiff's incident. Thus, Mr. Daley concluded that: (1) the awning complied with District of Columbia Building Code, Chapter 32, Encroachments into the Public Right of Way, Section 3201-4; (2) the illumination levels at the awning complied with the means of egress of the District of Columbia Building Code, and, (3) the Hotel's awning did not cause or contribute to Plaintiff's incident. (See Daley Report (Ex. 4); See also Defendant's Rule 26(a)(2) Statement [ECF 14]).

To the contrary, Plaintiff did not designate any liability expert to render opinions as to the standard of care relative to the awning, nor any opinions that Defendants supposedly breached that standard of care. Without an expert to dispute Mr. Daley's opinions, Plaintiff cannot establish a genuine dispute of material fact. Additionally, the failure to designate such an expert is fatal to Plaintiff's claim pursuant to the aforementioned District of Columbia authority. To the extent that Plaintiff contends that that the design or construction of the awning constituted a safety hazard, expert testimony is required to support such a contention.[3] To support such contentions, Plaintiff would need to prove that a national standard of care

---

[3] At deposition, Plaintiff attempted to stray from her allegations. Rather that focus exclusively on the awning, she also claimed that the construction and design of the sidewalk were also unsafe. Even assuming *arguendo* that Defendants are responsible for the maintenance of the sidewalk, which has not been established by Plaintiff, this still involves questions distinctly related to a specific science and profession. Regardless, whether the slope of the sidewalk was unsafe, or whether the sidewalk was constructed to be unreasonably slippery, are all questions "distinctly related" to the engineering or construction professions. Expert testimony is required when questions related to those professions are raised. *Tripmacher v. Starwood Hotels & Resorts Worldwide, Inc.*, 277 F. Supp. 3d 104, 111 (D.D.C. 2017). Therefore, either way, Plaintiff was required to retain an expert to support her theory of liability.

requires awnings to be designed and built in a particular way. This is particularly true in this case, where Plaintiff alleges that Defendants violated a specific section of the D.C. Building Code. (See Amended Complaint at ¶ 7). Without an expert, the jury is left without a concrete standard of care to consider. Absent a standard of care, a deviation from that standard is incapable of being proven. This would leave the jury to speculate as to Defendants' conduct, which is exactly was the D.C. Court of Appeals expressly intended to prevent.

The aforementioned authority overwhelming establishes that an expert is required for issues pertaining to safety. *Briggs*, 481 F.3d at 845-46. Discovery is now closed, and Plaintiff has failed to designate such an expert. Accordingly, Plaintiff is unable to make a prima facie showing that Defendants violated a national standard of care as it relates to premises safety. Because an expert has not been designated, Plaintiff is unable to support her allegation that the awning was unsafe. Accordingly, Plaintiff cannot support her claim that Defendant breached a duty of care. Without a breach, Plaintiff's cannot satisfy the elements of negligence and her claim against Defendants must fail as a matter of law.

## B. Plaintiff Was Contributory Negligent as a Matter of Law

The undisputed facts in this case reveal conclusively that Plaintiff was contributorily negligent as a matter of law.

In the District of Columbia, contributory negligence operates as a complete bar to recovery. *District of Columbia v. Brown*, 589 A.2d 384, 388 (D.C. 1991); *C&E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 263 (D.D.C. 2007). Contributory negligence is unreasonable conduct that falls below the standard to which a plaintiff should conform for her own protection, and that contributes to plaintiff's injury. *Scoggins v. Jude*, 419 A.2d 999, 1004 (D.C. 1980), citing Restatement (Second) of Torts § 463 (1965). Specifically, it is the failure to

9

act with the prudence demanded of an ordinary reasonable person under the circumstances. *Stager v. Schneider*, 494 A.2d 1307, 1311 (D.C. 1985).

Contributory negligence essentially deals with the question of whether the plaintiff acted reasonably under the circumstances. *Lynn v. Dist. of Columbia*, 734 A.2d 168, 172 (D.C. 1999); *see also Krombein v. Gali Serv. Industr., Inc.*, 317 F. Supp. 2d 14, 18 (D.D.C. 2004) (quoting *Queen v. Wash. Metro. Area Transit Auth.*, 842 F.2d 476, 479 (D.C. Cir. 1988)). Unreasonable conduct would include a person's intentionally and unreasonably exposing [herself] to a condition she knows or has reason to know about. (*See*, Restatement (Second) of Torts § 466 (1965)). District of Columbia courts have adopted the Restatement definition. *See Banks v. District of Columbia*, 551 A.2d 1304, 1308 n. 12, 1309 (D.C. 1988). To operate as a defense, the contributory negligence must be a proximate cause of the injury. *First American Bank, N.A. v. District of Columbia*, 583 A.2d 993, 997 (D.C. 1990). A plaintiff is barred from recovery if her "negligence was a substantial factor in causing her injury, even if the defendant also was negligent, as long as the plaintiff's negligence contributed in some degree to [her] injury." *Sinai v. Polinger Co.*, 498 A.2d 520, 528 (D.C. 2007).

Although generally contributory negligence is reserved for jury consideration, there are cases in which but one reasonable inference can be drawn from undisputed facts, such that contributory negligence is established as a matter of law. When the facts are undisputed and, considering every legitimate inference, only one conclusion may be drawn, a trial court may find contributory negligence as a matter of law. *D. C. Transit System, Inc. v. Harris*, 284 A.2d 277, 279 (D.C. 1971). When the evidence is so clear and unambiguous, contributory negligence should be found as a matter of law. *Tilghman v. Johnson*, 513 A.2d 1350, 1351 (D.C. 1986). Where reasonable persons, after viewing the facts in the light most favorable to

10

the non-moving party, can draw but one inference from those facts, and where that one inference points "unerringly" to the conclusion that the plaintiff failed to act reasonably under the circumstances, the Court may find that he was contributorily negligent as a matter of law. *Phillips v. Fujitec Am., Inc.*, 3 A.3d 324, 330 (D.C. 2010).

This Court has ruled similarly to the District of Columbia Court of Appeals, holding that "where the facts are undisputed and, conceding every legitimate inference, only one conclusion may be drawn, . . . the trial court may rule as a matter of law on . . . . contributory negligence." *Blake v. Securitas Sec. Servs.*, 962 F. Supp. 2d 141, 146 (D.D.C. 2013).  The D.C. Circuit Court has also held that it is appropriate to remove the decision about contributory negligence from the jury where there is a complete lack of evidence to support a jury's conclusion that a plaintiff was not contributorily negligent. *See Foshee v. Consolidated Rail Corp.* 849 F.2d 657 (D.C. Cir. 1988) (affirming district court's granting of defendant's motion for judgment notwithstanding the verdict on basis of contributory negligence of plaintiff).

In the matter at hand, the only reasonable conclusion from the evidence of record is that Plaintiff caused and/or contributed to her own injury.

The facts of this case are simple and undisputed.  Plaintiff exited a taxi in front of the Hotel.  It was raining at the time.  After a few moments, the taxi began to drive away.  As the taxi began to drive off, Plaintiff proceeded to chase after it.  Video surveillance confirms that as Plaintiff was running after the moving vehicle, she slipped and fell.  (Ex. 1).  Plaintiff does not dispute what occurred.  By her own testimony, Plaintiff conceded that she was running after the vehicle.  (Ex. 2 at 42:2-44:4).  Indeed, even Plaintiff's counsel acknowledged that the video speaks for itself.  (Id. at 45:17-18).  Aside from herself, Plaintiff will not be presenting any

11

other fact witnesses to testify at trial.[4]  As such, the totality of evidence establishes that Plaintiff slipped as a result of her own actions.

There is no evidence that Plaintiff was forced to run after the vehicle.  She voluntarily chose to do so.  There is no dispute that running after a moving vehicle is unsafe, particularly in wet weather.  In sum, had she simply been exercising due care for her own well-being, Plaintiff would not have slipped or fallen.  Nonetheless, the undisputed evidence, and certainly well beyond a preponderance of the evidence, establishes that Plaintiff was not paying any such attention.  She failed to act with reasonable care, and that failure was a proximate cause of her own injury.

There is no genuine dispute that Plaintiff's lack of care constitutes contributory negligence as a matter of law.  Accordingly, Plaintiff's claim against Defendants is barred and summary judgment should be entered in Defendants' favor.

C.  **InterContinental Hotels Group Resources, Inc. Does Not Own/Operate the Hotel**

The record is entirely devoid of any evidence that Defendant InterContinental Hotels Group Resources, Inc. owned or operated the Hotel.  In the original Complaint, Plaintiff alleged that InterContinental Hotels Group Resources, Inc. owned the Hotel.  (See generally Complaint).  However, at the initial scheduling conference, defense counsel requested that the pleading be amended to reflect the correct operating entity—Inter-Continental Hotels Corporation.  Plaintiff subsequently filed an Amended Complaint adding in Inter-Continental Hotels Corporation as a defendant, but failed to remove InterContinental Hotels Group

---

[4] There was only one eyewitness to the incident—Nicole Huber.  However, after Ms. Huber refused to be deposed, Plaintiff indicated that she will not be calling Ms. Huber to testify at trial.  (See Joint Post-Discovery Status Report [ECF 17]).

Resources, Inc.  The Amended Complaint wrongfully contended that both defendants owned the Hotel.

InterContinental Hotels Group Resources, Inc. does not operate, nor has it ever operated the Hotel.  (See Affidavit (Ex.5)).

When asked in discovery to state the factual basis to support the contention that InterContinental Hotels Group Resources, Inc. owned, operated, managed, or controlled the Hotel, and the factual basis to support Plaintiff's contention that her damages were caused by InterContinental Hotels Group Resources, Inc., Plaintiff responded as follows:

> "Plaintiff has learned that parent company of Inter-Continental Hotels Corporation is not Intercontinental Hotels Group Resources, Inc. and thus Plaintiff seeks consent to amend pleadings in order to substitute correct parent company."

(See Plaintiff's Answer to Resources' Interrogatory No. 2 and 3 (Ex. 6).

Plaintiff has made no effort to amend the pleading a second time.  Regardless, inasmuch as it is undisputed that InterContinental Hotels Group Resources, Inc.: (1) does not own or operate the Hotel, and, (2) did not proximately cause her damages, the claim against that entity should be dismissed.

## IV.    CONCLUSION

WHEREFORE, Defendants respectfully request that summary judgment be entered in their favor and that the Complaint be dismissed with prejudice.

13

DATED this 14th day of June, 2018.

Respectfully submitted,

**BONNER KIERNAN TREBACH & CROCIATA, LLP**

/s/ Michael L. Pivor

Michael L. Pivor, Esquire, DC No. 500911
1233 20th Street, N.W., Eighth Floor
Washington, D.C. 20036
Telephone: (202) 712-7000
Facsimile: (202)712-7100
mpivor@bonnerkiernan.com
***Counsel for Defendants***

14