IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RUTH EVANGELISTA BOFF** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **Civil Action No. 1:17-cv-01523** |
| **INTERCONTINTENTAL HOTELS** | : | |
| **GROUP RESOURCES, INC.** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants InterContinental Hotels Group Resources, Inc. and Inter-Continental Hotels Corporation (hereinafter "Defendants"), by and through counsel, Bonner Kiernan Trebach & Crociata, LLP, pursuant to Fed. R. Civ. Proc. 56; and LCvR 7(a) and 7(h) and submit the following reply brief in support of their Motion for Summary Judgment.

### I.    FACTUAL BACKGROUND

The Amended Complaint alleges that on July 29, 2016, Plaintiff Ruth Evangelista Boff ("Plaintiff") slipped and fell on the sidewalk, which was wet from rain, at the 1401 Pennsylvania Avenue, N.W. entrance of the Willard Hotel. Plaintiff alleges that the awning above the entrance to the Hotel was placed in violation of District of Columbia Building Code so that it caused rainwater to pour directly onto the ground below where Plaintiff walked. Plaintiff failed to designate a necessary expert witness to support this allegation.

Furthermore, video surveillance reveals that Plaintiff slipped as she was running after the moving vehicle. (See video surveillance footage (Ex. 1 to Defendants' Memorandum));. Plaintiff conceded at deposition that she was running after the vehicle, in rainy weather, at the time of her fall. (Plaintiff's Transcript (Ex. 1) at 42:2-44:4).

## II.      ARGUMENT

### A.  Plaintiff Failed to Designate a Required Expert Witness

Plaintiff's opposition appears to misunderstand the purpose for why District of Columbia law requires expert testimony to establish a standard of care in a wide variety of circumstances.  The purpose of requiring expert testimony to establish a standard of care is to avoid speculation about the conduct against which the defendant's actions are to be judged. *Washington v. Washington Hospital Center*, 579 A.2d 177, 181 (D.C. 1990).

It was well-settled that to prevail on any negligence claim under D.C. law, a plaintiff must prove the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury.  *Scales v. District of Columbia*, 973 A.2d 722, 730 (D.C. 2009)).  A national standard of care must describe a specific standard that has been accepted in the industry.  *Casey v. McDonald's Corp.,* 880 F.3d 564, 569 (D.C. Cir. 2018).  As articulated in Defendants' initial memorandum, the D.C. Court of Appeals often requires expert testimony in cases involving public safety.  Indeed, the D.C. Court of Appeals has repeatedly found expert testimony necessary on the facts of particular cases involving a loss of footing. *See e.g., Wilson v. Wash Metro Area transit Auth.,* 912 A.2d 1186, 1191 (D.C. 2006) (affirming judgment granted for defendant notwithstanding the verdict where plaintiff "presented no expert testimony,…with respect to the presence of orange sticky substance on the steps"); *Twyman v. Johnson,* 655 A.2d 850, 853 (D.C. 1995) (affirming directed verdict for defendant where expert's testimony "had no foundation" and plaintiff "was the only witness" to her slip).

Additionally, expert testimony is required to establish the standard of care if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the

ken of the average layperson.'"   *Briggs v. WMATA*, 481 F.3d 839, 845 (D.C. Cir. 2007) (quoting *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000)).

The limited exception to this rule is if the subject matter is within the realm of common knowledge and everyday experience.  *Hill v. Metro. African Methodist Episcopal Church,* 779 A.2d 906, 908 (D.C. 2001).   The limited "'common knowledge' exception to the expert testimony requirement is recognized only in cases in which everyday experience makes it clear that jurors could not reasonably disagree over the care required."  *Briggs v. WMATA*, 481 F.3d at 846; *See also Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (noting that "[r]ecently. . . the D.C. Court of Appeals has required expert testimony in a wider variety of cases, even in those that might initially seem to fall within jurors' common knowledge.").

In the recent case of *Tripmacher v. Starwood Hotels & Resorts Worldwide, Inc*., this Court held that when questions related to the engineering or construction professions are raised by a plaintiff, as they are in this case, expert testimony is required to establish the requisite standard of care.  277 F. Supp. 3d 104, 111 (D.D.C. 2017).  In *Tripmacher,* a guest tripped over a portable ramp while attending an event at the St. Regis Hotel.  The plaintiff contended that the ramp lacked handrails, was built too small, and was covered in carpet that blended in with the ballroom floor.  *Id.* at 110.  However, the plaintiff failed to designate an expert to articulate a national standard of care.  In opposing the defendant's motion for summary judgment, the plaintiff argued that the ramp was within the jury's common knowledge.  This Court disagreed, holding that the specific alleged flaws identified were all distinctly related to the design and construction of the ramp, and thus to the engineering or constructions professions.[1]  *Id.* at 110-

---

[1] Notably, in opposing the motion for summary judgment, the plaintiff in *Tripmacher* cited to many of the same cases cited in Plaintiff's opposition in the instant matter.  This included *Destefano v. Children's Nat'l Med. Ctr.,* 121 A.3d 59 (D.C. 2015); *Bostic v. Henkels & McCoy, Inc.,* 748 A.2d 421 (D.C. 2000).   This Court determined

3

11. This Court therefore concluded that expert testimony was required to establish the standard of care, and that the failure to designate such an expert entitled the defendant to summary judgment. *Id.* at 111.

Similarly, in the matter at hand, Plaintiff's sole factual allegation is that "the awning above the exterior of the front entrance to the Hotel] was placed in violation of District of Columbia Building Code Chapter 32, Encroachments into the Public Rights of Way, § 3201-4 so that it caused rainwater to pour directly onto the polished granite ramp where Plaintiff walked." (See Amended Complaint at ¶ 7). In other words, Plaintiff contends that the awning was designed or constructed in a negligent manner. As Defendants' engineering expert observed, the awning at issue was equipped with a downspout piping system. (See William Daley, PE report (Ex. 2) at pp. 6-9). Understanding how the piping system of such an awning operates requires knowledge of complicated sciences such as engineering, architecture, mechanics, and plumbing. Inasmuch as Plaintiff contends that certain technical aspects of this particular awning were unsafe, an expert is required to: (1) identify the national standard of care applicable to awning design and construction, that has been accepted in the industry, and, (2) identify whether the design and construction methods utilized for the awning at issue deviated from that standard of care.

However, Plaintiff did not designate any liability expert to render opinions as to the standard of care relative to the awning, nor any opinions that Defendants supposedly breached that standard of care. Reasonable jurors could certainly disagree over whether the relevant design, engineering and construction decisions constituted safety hazards. Such decisions require specific technical knowledge which is not within the realm of the average juror's

those cases to be inapplicable, holding that the features of the ramp identified did not create the kind of hazard the D.C. Court of Appeals has held sufficient to ameliorate the need for expert testimony in cases involving public safety. *Tripmacher v. Starwood Hotels & Resorts Worldwide, Inc.*277 F. Supp. 3d 104, 110-11 (D.D.C. 2017). In fact, this Court explicitly held that *Trust v. Washington Sheraton Corp.,* 252 A.2d 21 (D.C. 1969), also cited by Plaintiff in this case, does not reflect the modern position of the D.C. Court of Appeals. *Id.* at n.3.

common knowledge.  As such, the limited exception to the expert requirement is inapplicable to the matter at hand.  *Briggs*, 481 F.3d at 846.  Without an expert, the standard of care is incapable of being proven.

Plaintiff's intent to seek a *res ipsa loquitor* instruction at trial does not obviate the need for her to have retained a liability expert.  Plaintiff has presented no evidence that she will be entitled to a *res ipsa loquitor* instruction.  "Res ipsa loquitur permits an inference of negligence only where plaintiff establishes that: (1) an event would not ordinarily occur in the absence of negligence; (2) the event was caused by an instrumentality in defendant's exclusive control; and (3) there was no voluntary action or contribution on plaintiff's part.".  *Marshall v. Townsend*, 464 A.2d 144, 145 (D.C. 1983).  All three elements must be proven.  *Id.*  Here, a slip on a wet sidewalk can certainly occur for reasons having nothing to do with negligence.  Plaintiff has produced no evidence that her accident was caused by an instrumentality, or that such an instrumentality was under Defendants' exclusive control.  Further, as will be discussed further in Subsection II(C) below, there is ample evidence of Plaintiff's contributory negligence.  Inasmuch as *res ipsa* is inapplicable to the matter at hand, Plaintiff was required to designate an expert.

Because Plaintiff is unable to establish a national standard of care without expert testimony, her negligence claim must fail as a matter of law.

### B.  There is No Evidence of an Oil Spill

In an apparent attempt to divert from the awning claim, and her failure to designate an expert to support that claim, Plaintiff alternatively now claims that there was oil spilled on the sidewalk.  Plaintiff does not mention the presence of oil anywhere in her Amended Complaint or her answers to interrogatories.  (See generally Amended Complaint; see also Plaintiff's

Answers to Interrogatories (Ex. 3).  Plaintiff only alleges that the awning caused or contributed to her fall.  (Id.)

In support of this alternate claim, Plaintiff produced one photograph.  (See Exhibit 5 to Plaintiff's opposition).  According to Plaintiff, this photograph was taken by her niece on an unknown date after the incident.  (Ex. 1 at 33:1-34:1).  It purports to show spill of an unknown substance under a control panel, during the daytime, in a different location from where Plaintiff slipped.  (Id.; See also video footage of incident).   Plaintiff assumed the substance to be oil.  Regardless, when asked by her own attorney if she could verify whether a spill, similar to that depicted in the photo, was present on the night of the incident, Plaintiff was unable to do so.

Q.   …was there oil like this at the time—in the area at the time of your fall?

A.  I couldn't assume, and I don't—I can't say for sure.

(Ex. 1 at 72:9-73:12).

Plaintiff was similarly unable to testify to defense counsel whether there was any oil or any other substance on the ground at the time of the incident.

Q.  Do you know for a fact whether there was any substance on the ground besides water that night?

A.  I don't know.

(Id. at 34:5-7).

Plaintiff has produced no evidence whatsoever that an oil spill existed on the night of the incident.  If Plaintiff has no evidence that there even was a spill on the ground, then she obviously has no evidence relating to how or when such a spill came to be on the ground, or whether any persons had actual or constructive notice of such a spill.  It is well-settled under District of Columbia law that, "[w]hen negligence is predicated on a dangerous condition, the plaintiff must show that the defendant had actual or constructive notice of the dangerous

condition." *Wise v. United States*, 145 F. Supp. 3d 53, 61 (D.D.C. 2015)(*citing Sullivan v. AboveNet Commc'ns, Inc.*, 112 A.3d 347, 356 (D.C. 2015) and *Croce v. Hall*, 657 A.2d 307, 310-11 (D.C. 1995)). Without such evidence in the record, this last-minute alternate theory fails and cannot be used by Plaintiff to avoid summary judgment.

### C.  Plaintiff Was Contributory Negligent as a Matter of Law

As argued in Defendants' initial memorandum, when the facts are undisputed and, considering every legitimate inference, only one conclusion may be drawn, a trial court may find contributory negligence as a matter of law. *D. C. Transit System, Inc. v. Harris*, 284 A.2d 277, 279 (D.C. 1971).  Where reasonable persons, after viewing the facts in the light most favorable to the non-moving party, can draw but one inference from those facts, and where that one inference points "unerringly" to the conclusion that the plaintiff failed to act reasonably under the circumstances, the Court may find that he was contributorily negligent as a matter of law. *Phillips v. Fujitec Am., Inc.*, 3 A.3d 324, 330 (D.C. 2010).

The facts of this case remain undisputed.  Plaintiff exited a taxi in front of the Hotel, during inclement weather.  After a few moments, the taxi began to drive away.  As the taxi began to drive off, Plaintiff proceeded to run after it.  Video surveillance clearly shows that as Plaintiff slipping and falling as she was running after the moving vehicle.  (See Video Surveillance, attached as Ex. 1 to Defendants' Memorandum).  While the footage speaks for itself, Plaintiff also confirmed her actions.  At deposition, Plaintiff specifically testified that she was running after the vehicle at the time of her fall.  (Ex. 1 at 42:2-44:4).

Plaintiff's opposition claims that each party is "proposing a different inference from an agreed set of facts."  It is unclear how this undisputed, material fact can be inferred in any way other than Plaintiff was not acting in a reasonable manner.  In any event, in support of this

"inference", Plaintiff produced an unsworn affidavit claiming that she was not running on the ramp in front of Defendants' hotel.  Such an affidavit is prohibited from being used in this manner, and should not be considered by this Court.  The "sham affidavit rule" specifically bars a deponent from filing a contradictory post-deposition affidavit in an attempt to fabricate a material issue of fact and thus preclude the granting of summary judgment. *See Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991) (recognizing principle that a party "may not create a material issue of fact simply by contradicting its prior sworn testimony").  The 'sham affidavit rule' is clearly stated in *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026 (D.C. Cir. 2007).  As recognized by the D.C. Circuit, "[v]irtually every circuit has adopted a form of the so-called 'sham-affidavit rule,' which precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the 'shifting party can offer persuasive reasons for believing the supposed correction' is more accurate than the prior testimony.' " *Id.* at 1030 (quoting *Pyramid Sec. Ltd.*, 924 F.2d at 1123).

Plaintiff's affidavit completely contradicts were prior sworn testimony.  As previously indicated, Plaintiff conceded at deposition that when the taxi started to leave, she began to run after it.  (Ex. 1 at 43:21-44:4).  Plaintiff has provided no reason, much less a persuasive reason, for why her unsworn affidavit is more accurate than her prior sworn testimony.  Consequently, this sham affidavit should be disregarded.

As such, the totality of evidence of record establishes that Plaintiff slipped as a result of running after a moving vehicle. There can be no reasonable dispute that such an act is dangerous, particularly in inclement weather.  Because Plaintiff's own actions led to her to fall and injure herself, there is no genuine dispute that Plaintiff's lack of reasonable care constituted contributory negligence as a matter of law.

**D. InterContinental Hotels Group Resources, Inc. Does Not Own/Operate the Hotel**

Defendants' memorandum established that there is no record evidence that Defendant InterContinental Hotels Group Resources, Inc. owned or operated the Hotel.  Plaintiff does not dispute, nor even make any reference to, this argument in her opposition.  Consequently, InterContinental Hotels Group Resources, Inc. should be dismissed.

**III.    CONCLUSION**

WHEREFORE, Defendants respectfully request that summary judgment be entered in their favor and that the Complaint be dismissed with prejudice.

DATED this 20th day of July, 2018.

Respectfully submitted,

**BONNER KIERNAN TREBACH & CROCIATA, LLP**

/s/ Michael L. Pivor

_____
Michael L. Pivor, Esquire, DC No. 500911
1233 20th Street, N.W., Eighth Floor
Washington, D.C. 20036
Telephone: (202) 712-7000
Facsimile: (202)712-7100
mpivor@bonnerkiernan.com
*Counsel for Defendants*

9

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT I caused a copy of the foregoing Defendants' Reply Brief in Support of its Motion for Summary Judgment to be served, via the Court's electronic filing system, this 20th day of July 2018, upon:

William G. Dansie, Esq.
Lucas Dansie, Esq.
Dansie & Dansie, LLP
406 5th Street, N.W.
Washington, D.C. 20001
*Counsel for Plaintiff*

/s/ Michael L. Pivor

_____

Michael L. Pivor