UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RUTH EVANGELISTA BOFF,

    *Plaintiff*,

v.

INTER-CONTINENTAL HOTELS
CORPORATION, *et al.*,

    *Defendants.*

No. 17-cv-1523 (DLF)

**MEMORANDUM OPINION**

This case arises from a slip and fall in front of the Willard InterContinental Hotel in Washington, D.C. Before the Court are the parties' cross-motions for summary judgment. Dkts. 19, 21. For the reasons that follow, the Court will grant the defendants' motion in part, deny it in part, and deny the plaintiff's motion.

    **I.**    **BACKGROUND**

The parties agree that Ruth Evangelista Boff slipped and fell on a sidewalk in front of the Willard hotel during a rainstorm. *See* Defs.' Statement of Material Facts Not in Dispute ¶¶ 1, 3, Dkt. 19-1; Pl.'s Statement of Material Facts in Dispute, Dkt. 20-3. But they disagree about two factual details.

First, the parties dispute whether a hotel awning caused excess rainwater to flow onto the public sidewalk where Boff fell. A provision of the D.C. Building Code mandates that "[d]rainage water collected from a roof, *awning*, canopy or marquee[] . . . shall not flow over a public walking surface." D.C. Building Code ch. 32, § 3201.4 (2013) (emphasis in original). Boff claims that, on the night of the incident, water flowed from the hotel's awning onto a

downward-sloping granite ramp in the sidewalk, making it more slippery than normal. *See* Pl.'s Statement of Material Facts in Dispute; Pl.'s Responses to Defs.' First Set of Interrogatories ¶¶ 2–5, Dkt. 20-6. The defendants, however, insist that this spillover never happened. Although they have no eyewitness who saw the incident, they commissioned a mechanical engineer to inspect the awning's design, including its drainage system. *See* Defs.' Mot. for Summ. J. Ex. 4, Dkt. 19-7. The engineer observed the drainage system in practice a few months after Boff's fall and concluded that the awning could not have caused rainwater to overflow onto the sidewalk as Boff describes. *Id.* at 1, 4–12.

Second, the parties dispute whether Boff was running after a taxi when she fell. The defendants insist that video surveillance footage and Boff's own deposition testimony conclusively establish that Boff was running in the rain when she fell. Defs.' Mot. for Summ. J. at 11–12. Boff disagrees. Although she answered "yes" in her deposition when asked if she had "*started* to run" when she fell, *see* Defs.' Mot. for Summ. J. Ex. 2 at 43:21–22, 44:4, Dkt. 19-5 (emphasis added), she maintains in a sworn affidavit that she was not actually "running," *see* Boff Affidavit, Dkt. 20-2. Boff does not dispute the defendants' video surveillance footage, but she argues that the footage is "susceptible of divergent inferences" and does not necessarily show that she was running. *See* Pl.'s Opp'n & Partial Mot. for Summ. J. at 4 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

On July 17, 2017, Boff filed a negligence action against Intercontinental Hotels Group Resources, Inc. in the Superior Court of the District of Columbia, alleging that the defendant breached its duty "to place the [hotel's] awning so that it properly protected the ramp at the hotel curb from rain and did not pour rainwater directly onto it." Compl. ¶ 11, Dkt. 1-1 at 10–12. On July 27, 2017, the defendant removed the action here and invoked the Court's diversity

jurisdiction. *See* 28 U.S.C. §§ 1332, 1441; Defs.' Notice of Removal ¶¶ 3–7, Dkt. 1. Boff later amended her complaint to add a second defendant: InterContinental Hotels Corporation. *See* Am. Compl. ¶ 2, Dkt. 12.

The defendants seek summary judgment because (1) Boff failed to designate an expert witness to establish the relevant standard of care, (2) Boff was contributorily negligent as a matter of law, and (3) one of the two corporate defendants—InterContinental Hotels Group Resources, Inc.—did not own or control the hotel where Boff was injured. *See* Defs.' Mot. for Summ. J. at 3–13.

Boff disputes the defendants' first two arguments but appears to concede the third. *See* Pl.'s Opp'n & Partial Mot. for Summ. J. at 2–3. Boff also cross-moves for partial summary judgment on liability because the defendants failed to rebut her allegation that water overflowed from the awning onto the sidewalk in violation of the D.C. Building Code. *Id.* at 3–4.

## II. LEGAL STANDARD

A court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Liberty Lobby*, 477 U.S. at 247–48. A "material" fact is one with the potential to change the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

In response to a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis added in original). "Where the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (internal quotation marks omitted).

**III. ANALYSIS**

This diversity suit for negligence is governed by D.C. law, including D.C.'s requirement that plaintiffs in certain negligence cases establish the relevant standard of care through expert testimony. *See Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1105, 1109 (D.C. Cir. 2012). The Court's duty is "to achieve the same outcome [that] would result if the District of Columbia Court of Appeals considered this case." *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006). To fulfill that obligation, the Court looks to the published opinions of the D.C. Court of Appeals. *Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 21 (D.C. Cir. 2014).

**A.     The Defendants' Motion**

1.     *Duty of Care*

The defendants first argue that the plaintiff was required—and failed—to establish the relevant standard of care through expert testimony. "Under D.C. law, a plaintiff alleging negligence 'has the burden of proving . . . the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the . . . injury.'" *Briggs v. Washington Metro. Area Transit Auth.*, 481 F.3d 839, 841 (D.C. Cir. 2007) (quoting *Varner v. District of Columbia,* 891 A.2d 260, 265 (D.C. 2006)). "If the appropriate standard of care falls within the realm of common knowledge and everyday experience, a plaintiff will not need expert testimony to establish a standard and a deviation." *D.C. v. Shannon*, 696 A.2d 1359, 1365 (D.C. 1997) (internal quotation marks omitted). However, "if the subject in question is so distinctly related to some science, profession, or occupation as to be

4

beyond the ken of the average layperson, expert testimony as to the standard of care will be required." *Id.* (internal quotation marks omitted).

This fact-sensitive standard is best illustrated by example. The D.C. Court of Appeals has required expert testimony in cases involving:

> maintenance of leaning trees; application of hair relaxer; tightness of handcuffs; cushioning for the ground underneath playground monkey bars; maintenance of street lights to prevent falling light globes; time frame for ordering building materials on a construction project; response when an arrestee is found hanging in his cell; and installation of a crosswalk, instead of a stop sign, light, or crossing guard.

*Briggs*, 481 F.3d at 845 (citations and internal quotation marks omitted). On the other hand, the D.C. Court of Appeals has not required expert testimony where the defendant left a vent in the floor of a parking garage uncovered, *see DeStefano v. Nat'l Children's Med. Ctr.*, 121 A.3d 59, 74–75 (D.C. 2015), where the defendant placed plywood boards covering a construction trench with gaps big enough to step into, *see Bostic v. Henkels & McCoy, Inc.,* 748 A.2d 421, 425–26 (D.C. 2000), where the defendant built a playground slide with a sharp hole in the metal handrails, *see District of Columbia v. Shannon*, 696 A.2d 1359, 1365–66 (D.C. 1997), where the defendant abandoned a tank of gasoline in violation of the D.C. Fire Code, *see Jimenez v. Hawk*, 683 A.2d 457, 459–62 (D.C. 1996), or where the defendant built a slightly raised bathroom step that was hard to spot and easy to trip over, *see Trust v. Washington Sheraton Corp.*, 252 A.2d 21, 22 (D.C. 1969).[1]

---

[1] The defendants argue that this last case, *Trust*, is out of step with the D.C. Court of Appeals' "modern position." Defs.' Reply at 4 n. 1, Dkt. 26. But the D.C. Court of Appeals expressly relied on *Trust*'s holding in 2000, *see Bostic*, 748 A.2d at 425, when the current approach was already well established, *see Briggs*, 481 F.3d at 845 (deriving the contemporary standard from D.C. cases decided between 1984 and 2000).

The defendants argue that Boff's claim requires expert testimony because her "theory of liability focuses on the construction, design, and engineering of the [hotel's] awning." Defs.' Mot. for Summ. J. at 5; *see also id.* at 6 ("Plaintiff contends that certain mechanical aspects of [the] awning were unsafe."). But Boff's claim actually relies on a much simpler theory: that the awning—however it was designed—caused water to spill onto the sidewalk in violation of the D.C. Building Code. *See* Am. Compl. ¶¶ 7, 12 (citing D.C. Building Code ch. 32, § 3201.4). That theory does not require expert testimony.

First, Boff's claim involves a straightforward hazard. Most, if not all, jurors will have experienced the danger of a surprisingly slippery floor. And although "[r]ecently . . . the D.C. Court of Appeals has required expert testimony . . . in [cases] that might initially seem to fall within jurors' common knowledge," *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (citations omitted), it has consistently refused to require expert testimony where the "facts show[] an obvious hazard," *Wise v. United States*, 145 F. Supp. 3d 53, 61 (D.D.C. 2015) (collecting cases). Here, a reasonable jury could find that the accumulation of excess water on a downward-sloping granite ramp without warnings presented an "obvious hazard" that falls within the ken of the average lay juror.

Second, Boff's claim is rooted in a specific code violation, which can negate the need for expert testimony. In *Briggs*, the D.C. Circuit surveyed the D.C. cases that have required expert testimony. *See* 481 F.3d at 845 (collecting cases). Tellingly, not one of those cases involved the

violation of a statute, regulation, or ordinance.[2]  Only two cases even considered a potential legal or policy violation, and in doing so they confirmed the importance of binding regulations to the analysis.  In *Messina v. District of Columbia*, the court required expert testimony and rejected a set of non-binding "guidelines" as insufficient to establish the standard of care because the guidelines had not "been promulgated" and the plaintiff failed to show that they had actually been "implemented or applied."  663 A.2d at 539.  In *Toy v. District of Columbia*, the court refused to rely on a "policy directive" designed to "guide the actions of police officers" because the policy was "written in such general language" that it merely restated the common-law duty to "exercise reasonable care under the circumstances."  549 A.2d at 7.  The implication, of course, is that a *binding* and *specific* standard would present a different case and could negate the need for expert testimony.  The D.C. Court of Appeals' decision in *Jimenez v. Hawk* confirms this reasoning.  There, the court held that the plaintiff did not need to introduce expert testimony where the defendant had abandoned a tank of gasoline in violation of the D.C. Fire Code.  683 A.2d at 462.  After observing that "code violations, especially those with the public safety as an objective, are evidence of negligence," *id.* at 461, the court concluded that "[t]he jury . . . surely could use its common sense and everyday experience to infer reasonably from the evidence that an abandoned tank neither removed from nor secured in the ground *as required by the D.C. Fire Code* . . . constituted negligence," *id.* at 462 (emphasis added).

A code violation is relevant to the expert testimony requirement because it can impact the applicable standard of care in two ways.  First, it might be used to establish "negligence per se."

---

[2] *See Katkish v. District of Columbia,* 763 A.2d 703, 706 (D.C. 2000); *Scott v. James,* 731 A.2d 399, 400 (D.C. 1999); *Tillman v. Washington Metro. Area Transit Auth.,* 695 A.2d 94, 97 (D.C. 1997); *Messina v. District of Columbia,* 663 A.2d 535, 538 (D.C. 1995); *Rajabi v. Potomac Elec. Power Co.,* 650 A.2d 1319, 1322–23 (D.C. 1994); *Toy v. District of Columbia,* 549 A.2d 1, 7 (D.C. 1988); *District of Columbia v. Freeman,* 477 A.2d 713, 719–20 (D.C. 1984).

*McNeil Pharm. v. Hawkins*, 686 A.2d 567, 578 (D.C. 1996). If the plaintiff can show that a particular ordinance was "enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred," then an "unexplained violation of that standard" will "render[] the defendant negligent as a matter of law." *Rong Yao Zhou v. Jennifer Mall Rest., Inc.*, 534 A.2d 1268, 1273–75 (D.C. 1987) (internal quotation marks omitted). In that case, the plaintiff can "rely on [the] statute or regulation as *proof* of the applicable standard of care." *McNeil Pharm.*, 686 A.2d at 578 (emphasis added). And expert testimony will only be required if it is necessary to help the jury understand the ordinance itself, or how it applies. *See id.* at 481–82; *see also Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 225 (D.C. Cir. 2011) ("[W]here a statute uses terms familiar to a lay person, the district court's jury instructions may provide sufficient guidance," obviating the need for expert testimony.). Second, even if the requirements for negligence per se are not met, the "violation may [still] be admitted as *evidence* of negligence." *Rong Yao Zhou*, 534 A.2d at 1274 (emphasis added). In that case, as in *Jimenez*, the statute or regulation—while not dispositive—still informs the standard of care and provides the jury with an objective factor that can support an inference of negligence under the circumstances. *See* 683 A.2d at 462.

Here, Boff may be able to use the prohibition on overflowing water to establish negligence per se. The D.C. Court of Appeals has not considered whether D.C. Building Code § 3201.4 was enacted to prevent pedestrians like Boff from slipping, but it has "recognized that a variety of statutes"—including "building codes"—"have a public safety purpose justifying the application of the rule that their violation constitutes negligence." *Rong Yao Zhou*, 534 A.2d at 1274. And other jurisdictions have relied on nearly identical provisions to establish negligence per se in slip-and-fall cases. *See, e.g.*, *Cobb v. Salt River Valley Water Users' Ass'n*, 114 P.2d

8

904, 906–07 (Ariz. 1941) (violation of municipal ordinance prohibiting the flow of waste water onto sidewalks established negligence per se where the plaintiff slipped on a sidewalk covered with water from adjacent sprinklers); *Lazarides v. Turowske*, 162 N.E. 610, 612–13 (Ohio Ct. App. 1927) (violation of ordinance prohibiting the use of spouts causing water to flow onto sidewalks established negligence per se where the plaintiff slipped on a sidewalk covered with ice from frozen discharge). If the negligence per se doctrine applies, the D.C. Building Code will provide the relevant standard of care, and the jury will apply its plain language without the need for expert testimony.

Further, even if Boff cannot establish the requirements for negligence per se, the jury could still infer negligence from the code's violation in combination with other factors, such as the accumulation of water on a downward-sloping granite ramp without posted warnings. A jury could find negligence from these facts, using the violation as evidence, as the jury did in *Jimenez*.

Given the potential building code violation and Boff's straightforward theory of liability, the defendants' reliance on *Tripmacher v. Starwood Hotels & Resorts Worldwide, Inc.*, 277 F. Supp. 3d 104 (D.D.C. 2017), *appeal dismissed*, No. 17-7153, 2018 WL 3156941 (D.C. Cir. May 30, 2018), is misplaced. In *Tripmacher*, the plaintiff tripped over a temporary wheelchair ramp erected for a crowded event, and the court required expert testimony "because [the plaintiff's] theory of negligence involve[d] issues relating to crowding, lighting, and the specifications to which the temporary wheelchair ramp was designed and constructed." *Id.* at 111. But although *Tripmacher*, like this case, dealt with a loss of footing on hotel property, the similarities end there. Contrary to the defendants' suggestion, Boff's theory has nothing to do with the awning's "specifications," or the details of its construction or design. Nor does it involve the "lighting" of

9

the entrance, or the complex considerations of crowd-management or disability accommodations. It focuses, quite simply, on the purported overflow of water onto an already-slippery sidewalk.

Although "the D.C. Court of Appeals has repeatedly found expert testimony necessary on the facts of particular cases involving a loss of footing," *id.*, it has also repeatedly refused to require expert testimony in cases involving obvious hazards, such as uncovered vents, gaps in floorboards, holes in handrails, abandoned gas tanks, and slightly raised steps. In this case, a reasonable jury could find that the accumulation of excess water on a downward-sloping granite ramp—allegedly in violation of the D.C. Building Code—created the sort of hazard that is evident to the average lay juror. Boff therefore was not required to designate an expert to establish the relevant standard of care.

2. *Contributory Negligence*

The defendants next argue that Boff was running in the rain when she fell and that this fact made her contributorily negligent as a matter of law. Defs.' Mot. for Summ. J. at 7–8. "Contributory negligence is the failure to act with the prudence demanded of an ordinary reasonable person under like circumstances." *Stager v. Schneider*, 494 A.2d 1307, 1311 (D.C. 1985). "The District of Columbia is one of the few jurisdictions in which the claimant's contributory negligence can act as a complete defense to the defendant's liability for negligence." *Jarrett v. Woodward Bros., Inc.*, 751 A.2d 972, 985 (D.C. 2000). But "it is the rare and exceptional case in which the evidence is so clear that the Court must find . . . contributory negligence as a matter of law." *Harrison v. United States*, No. CV 16-1829 (CKK), 2018 WL 4680204, at *3 (D.D.C. Sept. 28, 2018); *see also Lyons v. Barrazotto*, 667 A.2d 314, 322 (D.C. 1995) ("Issues of contributory negligence, like issues of negligence, present factual questions for the trier of fact unless the evidence is so clear and undisputed that fair-minded men can draw only one conclusion." (citations, alteration, and internal quotation marks

omitted)). Thus, "[i]ssues of negligence and contributory negligence are rarely appropriate for summary judgment." *Becker v. Lederer*, No. 15-CV-0044 (AK), 2016 WL 1452331, at *4 (D.D.C. Apr. 13, 2016).

The defendants argue that Boff must have been contributorily negligent because she was "running after a moving vehicle" when she slipped and fell. Defs.' Mot. for Summ. J. at 12. But that argument fails. First, the defendants point to no authority holding that running in the rain establishes negligence as a matter of law. *See id.* at 9–12. Second, even if such authority exists, the term "running" would still be unhelpful in this case because the surveillance footage shows movements that fall somewhere in between walking and running. Although Boff admits that she "started to run," Defs.' Mot. for Summ. J. Ex. 2 at 43:21–22, 44:4, she fell almost immediately before attaining much speed, *see id.* Ex. 1. As the video shows, Boff took three fairly quick steps, the last of which took her outside the covered awning and onto the patch of sidewalk where she slipped. *Id.* The jury will have an opportunity to review this video footage and determine whether Boff's movements—however they are described—were negligent under the circumstances. But the defendants provide no persuasive reason to take that quintessentially factual question away from the jury. *See Middleton v. Istithmar Hotels Washington LLC*, 181 F. Supp. 3d 91, 93 (D.D.C. 2015) (finding a "genuine dispute of material fact as to whether Plaintiff failed to exercise reasonable care in entering the W Hotel" when she stumbled).

3. *The Liability of InterContinental Hotels Group Resources, Inc.*

The defendants' final argument concerns what appears to be a lingering mistake in the pleadings. In Boff's initial complaint, she alleged that defendant InterContinental Hotels Group Resources, Inc. operated the Willard hotel. *See* Compl. ¶ 2. At the parties' initial scheduling conference, defense counsel requested that Boff amend her complaint to substitute the correct

11

operating entity: Inter-Continental Hotels Corporation. Defs.' Mot. for Summ. J. at 12.[3] The plaintiff later amended her complaint to add the correct defendant, but she neglected to remove the wrong defendant. *Compare* Compl. ¶ 2, *with* Am. Compl. ¶ 2. The defendants have provided evidence that InterContinental Hotels Group Resources, Inc. never owned, operated, or managed the Willard hotel. *See* Defs.' Mot. for Summ. J. Ex. 5, Dkt. 19-8. And Boff concedes that the "parent company of Inter-Continental Hotels Corporation is not Inter-Continental Hotels Group Resources, Inc.," and that she sought "to amend pleadings in order to substitute [the] correct parent company." Defs.' Mot. for Summ. J. Ex. 6 ¶¶ 2, Dkt. 19-9. Further, Boff's opposition makes no objection to the defendants' request for summary judgment as to InterContinental Hotels Group Resources, Inc. *See* Pl.'s Opp'n & Partial Mot. for Summ. J.

The defendants' evidence and the plaintiff's concessions reveal that there is no genuine dispute that Inter-Continental Hotels Group Resources, Inc. neither owned nor controlled the premises on which Boff was injured. The Court will therefore grant summary judgment as to that defendant.

### B. The Plaintiff's Motion

Boff seeks summary judgment on liability because, in her view, the defendants have not produced relevant evidence to rebut her testimony that water flowed from the hotel's awning onto the sidewalk in violation of the D.C. Building Code. Pl.'s Opp'n & Partial Mot. for Summ. J. at 3–4. Although the defendants offered an expert report concluding that the spillover did not occur, *see* Defs.' Mot. for Summ. J. Ex. 4, Boff contends that this report is inadmissible because the expert's observations took place months after the incident and lacked the substantially similar

---

[3] Boff does not dispute the defendants' representation that this request occurred.

12

conditions required for an experiment, Pl.'s Opp'n & Partial Mot. for Summ. J. at 3–4. The Court disagrees.

Objections to an expert's methodology "go to weight and not admissibility," *United States v. Second Chance Body Armor, Inc.*, 289 F. Supp. 3d 145, 157 (D.D.C. 2018), as long as the "methodology constitutes more than subjective belief or unsupported speculation," *DL v. D.C.*, 109 F. Supp. 3d 12, 30 (D.D.C. 2015). Here, a mechanical engineer studied the awning's drainage system, observed it in the rain in an effort to recreate the conditions present on the night of the fall, and concluded from these observations that the spillover could not have occurred. *See* Defs.' Mot. for Summ. J. Ex. 4 at 1, 4–12. While this testimony should not be confused with or presented as factual evidence, the expert's methodology "constitutes more than subjective belief or unsupported speculation," *DL*, 109 F. Supp. 3d at 30, and thus clears the relatively low hurdle of admissibility.

To be sure, certain conditions may have changed between the incident and the expert's observation. It is possible, for instance, that someone cleaned the gutters in the interim, or that it was raining harder or longer on the night of the incident than on the night of the engineer's observation. But "to the extent [Boff] views [the] expert testimony as unpersuasive, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *West v. Bayer HealthCare Pharm. Inc.*, 293 F. Supp. 3d 82, 96 (D.D.C. 2018) (alteration and internal quotation marks omitted). The jury can consider the possibility of changed circumstances, discount the expert testimony accordingly, and weigh that discounted testimony against Boff's eyewitness account. At this stage, the conflict between Boff's testimony and the

defendants' expert report creates a genuine and material issue of fact as to whether the awning caused water to spill onto the sidewalk.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the defendants' motion for summary judgment and denies the plaintiff's partial motion for summary judgment.

_____
DABNEY L. FRIEDRICH
United States District Judge

Date: December 4, 2018